IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **VICTORIA WASHINGTON** | * | |
| *Plaintiff*, | * | |
| v. | * | Civil Case No: 1:25-cv-2764-JMC |
| **NOTRE DAME OF MARYLAND, et al.** | * | |
| *Defendants.* | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Victoria Washington, *pro se*, filed the present lawsuit against Notre Dame of Maryland, Sean Patrick Delaney, and Mary Lou Yam (collectively "Defendants") on August 21, 2025. (ECF No. 1). On August 25, 2025, the Court ordered Plaintiff to file an amended complaint to satisfy Fed. R. Civ. P. 8. (ECF No. 4). On September 23, 2025, Plaintiff filed an affidavit, which the Court has construed as a supplement to the Complaint (together, the "Complaint"). (ECF Nos. 5, 6). Plaintiff's lawsuit arises from alleged disability discrimination. *Id.* Specifically, Plaintiff asserts unlawful disability discrimination in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq. (the "ADA"). Presently before the Court is Defendants' Motion to Dismiss the Complaint. (ECF No. 8). The motion is fully briefed, and no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025); (ECF Nos. 8, 22, 25). For the reasons that follow, Defendants' Motion to Dismiss is granted.

**I.   BACKGROUND**

Prior to August 23, 2023, Plaintiff worked in an unspecified position at Notre Dame of Maryland ("NDMU"). *See* (ECF No. 22 at 1-2).[1] On August 23, 2023, Plaintiff had a medical

---

[1] When the Court cites to a specific page number or range of page numbers, the Court is referring to the page numbers provided in the electronic filing stamps located at the top of every electronically filed document. At the motion to

emergency and "ended up in the hospital with an infected gall bladder, an abscess and sepsis." *Id.* at 1. Plaintiff avers she "went back to work and also worked from home" around September 15, 2023. *Id.* "From November 2024 to March of 2024, the doctors were trying to heal [Plaintiff's] wound." Plaintiff alleges on March 15, 2024, she learned she needed a below the knee amputation. *Id.* She "took a few days PTO" and "received a nerve block," so she was able to work from home at that time. *Id.*

Plaintiff alleges that at some time during that time period, she alerted the Director of Human Resources of her amputation and was "still processing the loss" while working from the hospital. *Id.* Thereafter, Defendant Delaney "sent a meeting request for May 15, 2024." *Id.* at 2. Plaintiff alleges she advised him of the amputation, and they agreed that if she could not return to work in four weeks she "would go on short term disability" under the Family Medical Leave Act. *Id.* Plaintiff asserts that she received the forms on May 19, 2024, and they were due on June 6, 2024. *Id.*

Plaintiff asserts on June 3, 2024, while still in the hospital, she "was released from [her] job by Sean Delaney with the approval of Mary Lou Yam," who is the president in charge of hiring and discharge approvals. *Id.* That same day, Plaintiff alleges she received a termination letter and severance agreement, including a release of claims, severance payment information, and Cobra insurance information. *Id.* Plaintiff "asked for clarification" about why she was terminated, and she asserts that NDMU told her that she was not doing her job. *Id.* Plaintiff alleges she had "no warnings" of this issue, verbal or written. *Id.* Sometime later in June, Plaintiff filed a claim with the Equal Employment Opportunity Commission ("EEOC"). *Id.* She met with the EEOC on October 10, 2024. After another injury later in October, Plaintiff alleges she "asked if [she] had a

---

dismiss stage, the Court "accept[s] as true all well-pleaded facts and construe[s] them in the light most favorable to the plaintiff." *Harvey v. Cable News Network, Inc.*, 48 F.4th 257, 268 (4th Cir. 2022).

case," and was advised that her severance agreement "may be a problem.[2]" *Id.* Thereafter, on February 26, 2025, the EEOC called Plaintiff to let her know NDMU "would like to settle for $7,500." *Id.* Plaintiff declined and obtained a right to sue letter, which provided a period of ninety days in which to file a lawsuit. *See id.*; *see also* (ECF No. 1-1). Plaintiff filed the instant case on August 21, 2025, which is eighty-nine days after she asserts the EEOC informed her that she needed to download her right to sue letter from a portal. *See* (ECF No. 22 at 2).

## II. LEGAL STANDARD

The purpose of Federal Rule of Civil Procedure 12(b)(6) "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)) (internal quotations omitted). To survive a Rule 12(b)(6) motion to dismiss, "detailed factual allegations are not required, but a plaintiff must provide the grounds of his entitlement to relief," which requires "more than labels and conclusions, or a formulaic recitation of the elements of a cause of action." *Petry v. Wells Fargo Bank, N.A.*, 597 F. Supp. 2d 558, 561–62 (D. Md. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007)) (internal quotations omitted). In considering a motion to dismiss, "the Court must accept the complaint's allegations as true, and must liberally construe the complaint as a whole." *Humphrey v. Nat'l Flood Ins. Program*, 885 F.Supp. 133, 136 (D. Md. 1995) (internal citations omitted). The Court must also construe the facts and reasonable inferences from the facts in the light most favorable to the plaintiff. *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997); *see also Petry*, 597 F. Supp. 2d at 562 ("Once a claim has been stated adequately . . . it may be supported

---

[2] In the Complaint, Plaintiff alleges she was "under duress" and "had a major health issue, lost [her] job, and would have no income." (ECF No. 22 at 2). However, in her opposition brief, Plaintiff indicated that "duress" was not the proper term, and is it is clear that she does not seek to raise an issue of duress in the present litigation. Therefore, the Court will not address the issue of duress.

by showing any set of facts consistent with the allegations in the complaint.") (quoting *Twombly*, 550 U.S. at 546).

"*Pro se* pleadings are liberally construed and held to a less stringent standard than pleadings drafted by lawyers." *Farrish v. Navy Fed. Credit Union*, No. CV DKC 16-1429, 2017 WL 4418416, at *2 (D. Md. Oct. 5, 2017), *aff'd*, 711 F. App'x 189 (4th Cir. 2018). This permits the Court to "consider additional facts and information supporting the complaint that is provided in an opposition to a motion to dismiss." *Morris v. Mem'l Dev. Partners, LP*, No. 1:23-CV-01641-JMC, 2024 WL 2155050, at *4 (D. Md. May 14, 2024). However, this "does not mean that the court should rewrite the complaint to include claims never presented." *Farrish*, 2017 WL 4418416, at *2; *see also Barber v. Obama*, No. CV RDB-12-2614, 2012 WL 12877388, at *1 (D. Md. Sept. 6, 2012), *aff'd*, 505 F. App'x 278 (4th Cir. 2013) ("A court is not obligated to ferret through a Complaint, searching for viable claims."). Nor does it require judges to "construct a party's legal arguments for him." *Johnson v. Navient Sols. LLC*, No. GJH-18-3612, 2019 WL 2270651, at *2 (D. Md. May 28, 2019) (quotation omitted).

### III.    ANALYSIS

Defendant urges this Court to dismiss the Complaint on the basis that her claim (1) fails to state a claim as a matter of law because she executed a severance and release agreement whereby she accepted "more than eighteen thousand dollars of severance benefits in exchange for…a release and discharge of NDMU and its officers and employees,[3]" and (2) is time barred. (ECF No. 8-1 at 1). For the reasons set forth below, it is only necessary to address the first argument.

---

[3] Defendant includes as an exhibit the "Confidential Severance Agreement and Release" (the "Release"). (ECF No. 8-2). Of course, courts ordinarily do not consider exhibits included in briefing at the motion to dismiss stage. *Shield v. Verizon Md., LLC*, No. 1:23-CV-02932-JMC, 2024 WL 1050996, at *4 (D. Md. Mar. 11, 2024). However, there exist limited circumstances in which documents that are (1) of the public record, (2) are explicitly incorporated into a complaint by reference, or (3) are so integral to the complaint that there is no dispute about the document's authenticity, such that a court may review them without converting a motion to dismiss into a motion for summary judgment. *Id.* Here, Plaintiff references the severance agreement in her complaint and again in her response in opposition to

4

### A. Plaintiff's Complaint is Precluded by Waiver and Release Under the Terms of the Severance Agreement.

Under a "somewhat modified" doctrine of *res judicata,* a release agreement may have preclusive effect on a subsequent lawsuit. *Bobbit v. Weber*, Civil Action No. DKC-24-2054, 2025 WL 2457664, at *3 (D. Md. Aug. 26, 2025) (citing *Norfolk S. Corp. v. Chevron, U.S.A., Inc.*, 371 F.3d 1285, 1291 (11th Cir. 2004)). A general release "bars all future claims against all other entities associated with the events that gave rise to a particular lawsuit." *Jacobs v. Venali, Inc.*, 596 F.Supp.2d 906, 911 (D. Md. 2009) (citing *Peters v. Butler,* 253 Md. 7, 251 A.2d 600, 602 (1969). In contrast, special releases "only release certain parties and/or certain claims from future litigation." *Id.* (citing *Fed. Sav. & Loan Ins. Corp. v. Reeves,* 816 F.2d 130, 134 (4th Cir.1987); *Virginia Impression Prods. Co. v. SCM Corp.,* 448 F.2d 262, 265 (4th Cir.1971)).

Of course, whether a suit is precluded by such an agreement is determined by the intent of the parties. *Norfolk S. Corp.*, 371 F.3d at 1291. Thus, courts rely on contract interpretation principles to determine the parties' intent. *Keith v. Aldridge*, 900 F.2d 736, 741 (4th Cir. 1990). "To discern the intent of the parties, the interpretation 'focuses on the writing, and its terms may supercede [sic] other manifestations of intention.'" *E. Coast Repair & Fabrication, LLC v. United States through Dep't of the Navy*, 492 F. Supp. 3d 625, 634 (E.D. Va. 2020), *aff'd sub nom.* 16 F.4th 87 (4th Cir. 2021) (quoting Restatement (Second) of Contracts ch. 9, introductory note (1981)). Indeed, courts must "construe the release to effectuate the parties' intentions." *Auslander v. Helfand*, 988 F. Supp. 576, 580 (D. Md. 1997) (citing *Panamerican Consulting Co. v. Broun*, 209 A.2d 575 (1965)).

---

Defendant's motion to dismiss. Therefore, the Court finds that at the very least, the severance agreement is integral to the Complaint and will consider it at this juncture. *Id.*

In those instances where a release's language is clear and unambiguous, the court affords the words their plain and ordinary meaning and will not consider extrinsic evidence. *See id.* "Thus, if the court determines that a contract is unambiguous on a dispositive issue, 'it may then properly interpret the contract as a matter of law.'" *Bobbit*, 2025 WL 2457664, at *4 (quoting *Cochran v. Norkunas*, 919 A.2d 700, 709 n.8 (Md. 2007)). A written contract is not ambiguous "simply because, in litigation, the parties offer different meanings to the language." *Diamond Point Plaza Ltd. P'ship v. Wells Fargo Bank, N.A.*, 929 A.2d 932, 952 (Md. 2007). Rather, "a written contract is ambiguous if, when read by a reasonably prudent person, it is susceptible of more than one meaning." *Calomiris v. Woods*, 727 A.2d 358, 363 (Md. 1999) (citing *Heat & Power Corp. v. Air Prods. & Chems., Inc.*, 578 A.2d 1202, 1208 (Md. 1990)). As such, this Court has dismissed claims following a plaintiff's knowing and voluntary execution of an unambiguous general release. *E.g.*, *Sefan v. Chrysler Corp.*, 472 F.Supp. 262, 265 (D. Md. 1979) (granting summary judgment when the evidence showed a plaintiff signed an "all inclusive" release that addressed all injuries relating to the accident for which he sought recovery).

Here, the operative provision of the Release provides,

> Except for those obligations and covenants which NDMU has under this Agreement, Ms. Washington does hereby forever and irrevocably release and discharge NDMU and each of NDMU's officers, directors, employees, agents, employees, representatives, independent contractors, affiliates, parents, subsidiaries, divisions, predecessors, assigns, successors, attorneys, and insurers (hereafter NDMU and such persons are sometimes referred to as the "Releasees") from any and all grievances, claims, demands, debts, defenses, actions, causes of action, obligations, contracts (including without limitation the Retention Agreement), promises, damages, judgments, expenses, attorneys fees, and liabilities, known or unknown, whatsoever, which she now has, has had, or may have, at law or in equity, in any way arising from or relating to any act, occurrence, or transaction occurring before the Effective Date, including without limitation acts, occurrences, and transactions relating to her employment with NDMU and the termination of that employment and claims arising under or relating to the Retention Agreement. This is a GENERAL RELEASE. Ms. Washington expressly agrees and acknowledges that she intends to release the Releasees from any and all

6

    claims relating to her employment with NDMU, including without limitation tort and contract claims, wrongful discharge claims, arbitration claims, statutory claims, workers compensation claims, claims arising under common law, claims arising under any federal or state wage and hour law or wage collection law, and claims of discrimination based on race, color, sex, religion, handicap, disability, national origin, ancestry, citizenship, marital status, retaliation, or any other factor under the Age Discrimination in Employment Act (29 U.S.C. §§ 626 et seq.) (the "ADEA"), Title VII of the Civil Rights Acts of 1964 and 1991 as amended (42 U.S.C. §§ 2000e et seq.), the Employee Retirement Income Security Act (29 U.S.C. §§ 1001 et seq.), the Consolidated Omnibus Reconciliation Act of 1985 (29 U.S.C. §§ 1161 et seq.), the Americans with Disabilities Act of 1990 (42 U.S.C. §§ 12101 et seq.), the Rehabilitation Act of 1973 (29 U.S.C. §§ 701 et seq.), the Family and Medical Leave Act of 1993 (29 U.S.C. §§ 2601 et seq.), the Fair Labor Standards Act (29 U.S.C. §§ 201 et seq.), any Maryland statute prohibiting employment discrimination, and/or any other law, statute, regulation, or ordinance prohibiting employment discrimination or governing employment.

(ECF No. 8-2 at 2).

Looking at the plain language of the Release, the parties clearly intended to execute a general release pertaining to "any and all claims relating to her employment with NDMU." *Id.* Moreover, the Release explicitly bars subsequent claims against NDMU and its agents under the ADA, which is the precise claim Plaintiff brought. *See id.* at 4; *Sefan*, 472 F.Supp. at 265; *Norfolk S. Corp.*, 371 F.3d at 1291. Additionally, there is no suggestion that NDMU has not complied with its obligations under the Release. *See* (ECF Nos. 1, 5). To the contrary, Plaintiff's opposition reiterates her knowing and voluntary decision to sign the Release, as she indicated, "I signed the severance agreement because I need to pay for Cobra and my monthly bills." (ECF No. 22). While such motivations are understandable, they are not of the type that to call into question a contract's enforceability. *See O'Shea v. Comm. Credit Corp.*, 734 F.Supp. 218, 220 (D. Md. 1990) ("Under principles of federal and Maryland contract law applicable to the issue of release, the decision to release federally-protected rights is enforced if the decision was voluntary, deliberate, and informed… One who has had ample time to read a release and had the capacity to understand it is bound thereby, in the absence of fraud, duress or imposition."); *see also Bushnell v. Rossetti,* 750

F.2d 298, 302 (4th Cir.1984); *Vincent v. Palmer,* 179 Md. 365, 375, 19 A.2d 183 (1941.) As Defendants point out, Plaintiff had twenty-one days to consider the terms of the agreement and had an opportunity to consult with an attorney under the plain language of the Release. *See* (ECF No. 8-2 at 3)[4] The Complaint provides no factual basis upon which the Court could infer otherwise, even under a liberal construction. Drawing all inferences in the light most favorable to Plaintiff and affording the liberal construction of the Complaint due to *pro se* litigants, the instant litigation contravenes the plain, unambiguous general release of the claims. *Sefan*, 472 F.Supp. at 265; *Norfolk S. Corp.*, 371 F.3d at 1291. Therefore, Defendants' Motion to Dismiss (ECF No. 8) is GRANTED.

## IV.   CONCLUSION

For the reasons stated above, Defendants' motion is GRANTED with prejudice, and the Clerk is directed to close the case.

Date: <u>January 22, 2026</u>                               /s/
                                                                     J. Mark Coulson
                                                                     United States Magistrate Judge

---

[4]   Ms. Washington acknowledges and agrees that she has read this Agreement carefully; that she has been advised that she has twenty-one (21) days from the date she receives this Agreement within which to consider whether she will accept the terms….that she has been advised to consult with an attorney or waived the right to do so; that she has the right to revoke this Agreement within the seven (7) day period immediately following her acceptance…

(ECF No. 8-2 at 3).